The last argument for today is in Case No. 21-1782, United States v. Davis. Good morning, Your Honors. May it please the Court, Timothy Murphy, appearing for Mr. Davis in this appeal. I'd like to address, Your Honors, the substantive unreasonable issue of relying my brief on the procedural unreasonableness that pleases the Court. To jump right into this, the Court imposed an unreasonable sentence in this matter in more than doubling the expected guideline sentence of 15 to 21 months. You're not arguing that the District Court didn't have the discretion to sentence Mr. Davis exactly as he did? No, Your Honor, we believe it was an abuse of discretion, though, under these circumstances. So you're saying he had the discretion, but he abused it by doubling the sentence from the maximum in the guidelines? Under these circumstances. Yes, Your Honor. No, no. I was just reacting to you, Judge. Answer Judge McCullough's question, then I'll answer yours. And under these circumstances, the Court relied in large part on anecdotal reports of local crime violence increasing. Events that occurred after the crime of conviction here commented on by the sentencing court as probably being very bad timing for my client. What I was going to say is the facts, these are public facts, public record facts that an enterprising and very talented law clerk got on the public record that one year after the crime, at the time of sentencing, after the crime, on June 12, June 16, June 17, June 18, June 21, June 23, June 28, twice, July 2nd and July 4th, there were homicides using a firearm in Rochester. There were a total of ten homicides using a weapon in the four weeks before Davis is sentencing him. We are constantly hearing that judges abuse their discretion and, you know, that they are many people standing where you are who say that. But I, but here where it seems, where the judge seems to have conceded that he was using today's headlines in order to decide what sentencing should be for an act considered, a perpetrator a year before, that's what bothers me, is can he, could he, as he admitted he did, could he use the present wave of violence reflected in the Rochester Times or whatever, could he use that as a reason, not could he double the sentence, but could he use that as a reason. Judge, let me back up just a little bit, just philosophically for a second. I say took a Covera for a different reason in my brief, but I think around page 194 or so of Covera, the Eastern District Judge there handled the situation, let's say, in a more appropriate way according to this court in giving the parties a heads up, here's what I'm thinking, here's some information, let's talk about it. But this court discusses the difference between the local, more subjective analysis of local crime impressions that people have as opposed to being objective. And the concern here is that without giving everyone a heads up and really deliberating this, this was just a knee-jerk reaction to an issue that was addressed for the first time by the government at sentencing. But it's deterrence. I understand that, but my question is even if he had said that, can he take, can he double the sentence concededly in large part because of what's going on today rather than in the streets, rather than what was going on at the time the crime was committed? So we would say, Judge, not under these circumstances. If you look at pages 85 through 87 of the record, and it's really 86 and 87 of the record, that's where our district court judge here is analyzing the uptick in gun violence. And the judge is focusing in on the purpose under 3553 of deterrence. And our position is this deters no one. The idea that my sentence is going to be increased by the conduct of other people, that is not in any way going to deter people in the future to change their own behavior. My behavior is not causing the doubling of the sentence here. The conduct of other people is causing it. It's related to the idea of promoting respect for the law, another component of 3553 the court mentioned. And that is what's missing from this sentence is predictability. The court is in general terms permitted to consider any information that is objective and reliable, give the other side a chance to speak about it, but not when it doesn't directly meet one of the purposes of 3553. This doesn't. This is not going to deter any future conduct in the future because it's not caused by the defendant's own conduct. The court can take it into consideration. I just want to make sure I understand your argument. In Caveira, I thought where you were going was that in Caveira there was more, the judge asked for more briefing to discuss the implications of the deterrence rationale in the black market there. Is that what you're saying here? That it was a procedural, had the judge offered that opportunity, then it would have been okay. But because it was, I think you said knee-jerk, that's what caused the unreasonableness. I just used Caveira for the substantive unreasonableness argument. But yes, in our brief we do make the argument that the court should have done what the Eastern District did that you were reviewing in Caveira, and that is they were concerned about gun trafficking coming into New York City. I'm concerned about it. I'm considering an upward variance, putting everybody on notice, let's brief the issue. That's our procedural argument. But the substantive argument is also brought out in Caveira around page 194 or so, and that is distinguishing between the local subjective mores that the court seemed to be getting into as opposed to the thrust of Judge Sachs' question, which is sort of pre- and post-world facts compared to the timing of what the considerations are. I believe, and I hope I'm answering it, there's nothing wrong on its face, all things being equal, with a district court judge considering what's going on in the community. But when the court is relying on the specific purpose of deterrence, the court has to make that link, and we say they didn't do it in this case. May I address one other reason that the court used, which is my client's criminal history. That was another basis the court used to double this sentence. He said your history and character are indicative of criminal activity. May I address something that led up to that, Your Honor? On page 79, my client begins to speak on his own behalf, and he says, from 2019 to 2020 was a bad year for me. There was a lot going on, and I admit I did wrong. The court follows up, I believe the next page, and says, you know, a couple of minutes ago, you said that something happened in 2019-2020 that led you to criminal activity again. Now, my client never said criminal activity. I think the court heard that, and that's fine, so the court's engaging my client. My client then explains that he was out of work in 2019-2020, he used to be a barber, he lost his job, things were going badly for him, and then he says COVID hit. So the judge jumps on that and says, wait a minute, you had that arrest in July of 2019 for the state drug case. That was before COVID. Isn't that correct? He says yes. And then on page 85, when the court is justifying, the court is just about to double the sentence, the court says this, I don't buy this COVID thing. Everyone's using that now as the newest excuse to explain criminal conduct. This was before COVID that you were arrested. What we're saying is the court had no basis to utilize that exchange with my client to say that this was a COVID excuse. My client was just explaining context. He was going to leave the issue alone. All he said was that he was having a bad year, he did lose his job, like in New York City, western New York, the unemployment rate around this time was through the roof. He wasn't using it as an excuse for committing the crimes, he was just giving context. Well, we know what was on the judge's mind because he used three pages of the sentencing colloquy to recite this man's criminal history, which everyone I guess had a copy of, and he read it into the record. Every single thing of his youthful offender, his criminal possession of marijuana, he read it all into the record so we know that was foremost in his mind. No question. And what's important about the COVID issue, and I'll just leave it here and I appreciate it, I'm over my time, was that it was in the midst, on page 85, in the midst of his justification for doubling the sentence because of criminal history. It was in the midst and he was what we're saying is that he took that conversation to an extent that the record does not support. And with that, I'll rely on my brief. Thank you. Mr. Eldridge. Good morning, your honors, and may it please the court. My name is Sean Eldridge, I'm an assistant United States attorney for the Department of Justice, and I'm here on behalf of the government before the district court below. Judge, we asked for a sentence that was at least in line with the sentence Mr. Davis received of 70 months for committing the exact same crime, that is possession of a firearm, as a convicted felon that he had been convicted for some 15 years prior and was now back again after committing, as your honor recited, as Judge Geraci recited as part of his sentencing, committed a whole bunch of other crimes in between, and was now back, request, excuse me. So he worked for 70 months and the judge only gave him 48 months. Correct, your honor. So he didn't follow your recommendation. As is his discretion, his very wide discretion in considering. Although the guideline was 14 to 21 months. 15 to 21 months. Yes, Judge Fuller. Those were the guidelines, that is correct. Thank you, Judge. As I was saying, the district court, and as some of the questions have already referred to, gave many reasons to support the court's sentence. As the panel has already recounted, Judge Geraci spent, I think, four pages of the record discussing Mr. Davis' extensive criminal history. Discussing the facts of the case. Discussing how he had committed this crime that the district court was very troubled by. Just 17 days after pleading guilty in state court to two felony drug offenses, and yet was possessing illegal guns in the city of Rochester. What bothers me here is that the judge said that, couldn't have been more wrong. He said, this is probably very bad timing for you. I agree with your attorney that this occurred probably prior to the spike in violence in the city, but I think we have to be very, very serious and send a very clear message. And the question is whether it's appropriate to take violence in the street yesterday and today, and apply it to more than double the center. It's that connection that I'm getting kind of lost. Sure. Thank you for that question, Judge Sack. I'd love to talk about it. I think reading the next two sentences after where your Honor picked off, or stopped off, are important too, because the court goes on to say, the guns on the street carrying loaded weapons on the street cannot be tolerated. And then says this. So this sentence, and your And that happened several times throughout the proceedings. The court was very cognizant and makes reference. Mr. Davis' lawyer in the district court had agreed, agreed, that violence going on in the city now is a factor that the court should consider, but also take that into consideration with the fact that the current spike in violence in Rochester happened after the conduct. And frankly, Judge, I think that's something that happens in both directions, in every case when district courts consider sentencing. To answer your question directly and bluntly, can a court take into account things that are happening today in imposing sentence? I think the answer is yes, in both directions, but they have to weigh them. So what do I mean by that? For example, we that happened post-arrest. I did these things while I was in jail to rehabilitate myself. Or I've done these things from the time I committed the crime to the time I'm being sentenced to try to show to the court that I've become a better person. We see it in the opposite direction too, sometimes maybe for a crime that has become less serious. It is not uncommon for- I understand that, but it's one thing for it to be something that he did, and another thing for it to be something that these crazy people out there in the street are shooting each other. He was in jail. I agree, Judge. Judge Geraci didn't say anything here to suggest that he thought Mr. Davis was shooting people on the street. In fact, he specifically found that Mr. Davis' discarding of the firearm did not create an immediate danger. So I think if Judge Geraci- He had double punishment because other people were going after him. Well, I don't want to wordsmith, but I reject the idea that this is double punishment. I'm sorry. I won't withdraw that more than doubling the guidelines. Fair enough. Fair enough, Your Honor. In the advisory guideline system, again, that's an elevator, I think, that the guideline system is a little bit different. For example, in a marijuana case, it's not uncommon for defendants now to argue, look, marijuana, in their view, is less serious now today than it was at the time they committed the crime because of changes in the law that are taking place. And judges routinely, routinely imposed reduced sentences on that basis. And I think the trick- I apologize, Judge Puller, I'm sorry. He took the marijuana possession very serious and itemized that when he read the criminal history. He did, Your Honor, Judge Puller- He's taken no account. He knows that killings have gone up, but he hasn't taken account that marijuana enforcement has gone down. Judge Geraci made one- He was selective in what he chose to rely on. Well, and the weight of any factor that, under the 3553A factors, this court has repeatedly said is not something- something that is solely in the discretion of that district court. I agree. In terms of- let me address your marijuana point briefly. I think Judge Geraci just made one reference to it to say and when you possessed the gun, there was also sale materials for drugs and marijuana and that's concerning to the court as well. And I think juxtaposed against the context of him talking about just as you were committing this crime, 17 days later you were arrested- or excuse me had pleaded guilty to selling cocaine. I think that makes perfect sense for the court to say you had just come before a court and say, I know that I'm wrong for selling cocaine, yet when you were arrested 17 days later with a gun, you're in possession of, yes, a different controlled substance, but still materials for sale. He also itemized marijuana convictions from his criminal history when it was illegal to possess or distribute. So he lists those two and found that interesting enough to put in the record. Your Honor, I don't think he Yes. Yeah, I think to say he has this extensive history over 15 plus years of coming back and back and back again and committing crimes and crimes. And Judge Geraci did characterize them too. I think Judge Geraci said something to the effect of between 2010 and 2019, he agreed and said the convictions that took place during that time period were less serious. But then in 2019, I think he said something to the effect of we ratcheted back up or we picked back up again with the cocaine convictions and then the firearms conviction in this case. Supposing as the judge said I have to be- he says this is a real serious gun problem. My daughter just came back and she says her best friend was just shot yesterday. And I think this is a much worse problem than what's been given blame for and therefore I'm doubling the- Could he base it on his personal experience of his daughter rather than what he read in the newspapers? Well, I think personal experience, Judge, is part of sentencing. Judges are obviously people. I don't think it's that easy, Your Honor, because there's no one formula that fits for sentencing. Sentencing, I think this court- I know this court has repeatedly said- I'm sorry, Your Honor. The guidelines is the formulation by a body delegated by Congress to do that of what's fair for each offense. Well, but only to set a starting point. They are, as this court well knows, they are one set of factors that the court has to consider. And in fact, it is procedural error for the court to even say I'm bound by the guidelines or to presume that they are mandatory. So they are absolutely important, Your Honor. We don't dispute that. They are something that has to be considered. But ultimately, as this court in Caveira in many cases has said, it's that analysis of the 3553A factors. I do want to- Your answer, about your answer to Judge Schatz hypothetical, assume everything else is the same as what happened here, except for the news, it's a personal experience that he's referring to. I hesitate for a second because I think the personal experience maybe makes it a little different when we start thinking about impartiality and recusal and maybe some other things that might come to mind. So I hesitate for a second on that. I think as a general matter, taking into account information that the general public learns through living their daily lives is information that everybody factors into how they conduct themselves. And I think when judges impose sentences, for example, in fentanyl cases, they are going to take account of the fact that right now fentanyl is a much more dangerous substance and we see overdoses taking place. Now that doesn't mean the district judge is saying you are creating overdoses. I think the district judge has to do what Judge Geraci did here. Take account of both of those things to say this is- So there's no doubt that gun violence was increasing in Rochester. But gun violence has always been a problem. Gun violence, unfortunately, is not new. So the idea that the court's sentence, both as a matter of public policy and under the 3553A factors, has to impose both general deterrence to the community and specific deterrence to the defendant I think is something that Judge Geraci specifically addressed and was very aware of. When he repeated, I think he said at least twice he says this sentence has to give a message to you and to the community. This sentence has to reflect your particular fact situation. And in fact, that was picking up on one of the defendant's responses, which was to say we agree, Judge. You have to take into account the violence in the city right now, but it also has to be recognized that that uptick has occurred after- I'm just curious. Did they say right now, or did they just say you have to take it? Never mind. You'd have to go back and find out. No, no, please. I misunderstood your question. My problem is timing. It's not the question of whether it has to be taken into account. My question is, is the timing on? That's all my question. That's good. I'm not aware of any case that says that the district court at the time of imposing sentence can't take a look at what is going on both in the defendant's life at the moment of sentencing as well as in the real world at the time of sentencing. In the real world at the time of sentencing is the question and my question is, is there any case law either way? Judge, I think under cases like Caveira, there's virtually no limit on the type of information that the district court can take into consideration. You're going to have to go back and read all 14 opinions in Caveira. There were many of them. As I was rereading them last night, I think I misidentified Judge Katzman's concurring opinion as Judge Raggi's concurring opinion. Yes, there are definitely many of them. But I think that is definitely something the court can take into consideration. But again, being careful as Judge Geraci did here to recognize what did this person do individually and what do I need to impose a sentence for that specifically deters this person who had gotten a 70 month sentence on the same crime and has an extensive record as we talked about and also deters the community generally from participating in those types of crimes. I see I'm over my time so unless the panel has any further questions. Thank you very much. Appreciate it. Thank you for coming and doing this. It's nice to have you. It's weird seeing you on this side. I'm used to seeing you over here. But never any longer in the middle. Your Honor, I just want to point out one thing. The discussion was regarding defense counsel's comments, I believe from Judge Sack. I would just refer the court to page 78 of the record. That's where defense counsel addresses the issue. He doesn't mention time. He just says that I know the gun crimes are on the rise in the city and elsewhere. The court does certainly need to take that into consideration but the court also needs to consider it happened a year later. The court doesn't really address the issue specifically, Your Honor. I think one of the reasons is he doesn't know what's coming. He doesn't know that this issue is about to result in my client's sentencing range being doubled. The other comment that was made by my friend had to do with the endangerment finding. I would just remind the court that with regards to the seriousness of the offense, the district court judge here did not find for the reckless endangerment enhancement under 3C1.2, which went to the core of my client's conduct of conviction here. And the last point, and it was talked about a couple times again, there's no question that a court can consider what's going on now. No question. But every federal district court is bound by 3553. It has to pursue one of these purposes. And the purpose that this judge specifically said that this pursued was deterrence. And it's the conduct of, you'd have to believe that people who are inclined to commit crimes in the future would see this proceeding and know that their own conduct is not going to increase their sentence twofold. And yet they're going to avoid committing the crime. That doesn't make sense. And that's substantively unreasonable in our system. Because it's not my conduct that's causing it. What if the crime rate goes down? So only when it's reported in the newspaper, kind of anecdotally, that the crime rate's going up. Unless the court, in general terms, can weigh the issue of deterrence. But when the court connects the specific conduct of other people, it has to connect it at least to something under 3553 in order for it to not be unreasonable. That's our position on it. I appreciate that, Your Honor. Thank you very much. Court is adjourned.